## Robert BOXLEY *v.* Kathy S. BOXLEY

CA 01-1141                                        73 S.W.3d 19

Court of Appeals of Arkansas
Division III
Opinion delivered April 17, 2002

*Mike Everett*, for appellant.

No response.

JOHN F. STROUD, JR., Chief Judge. Robert Boxley has appealed from a divorce decree entered by the Poinsett County Circuit Court in July 2001. He challenges the judge's allocation of the marital debts and his refusal to confirm a commissioner's sale of a portion of the marital personal property. We affirm the judge's decision.

Robert married appellee, Kathy Boxley, in November 1986. Their daughter, Jennifer Paige, was born in December 1989. During most of the marriage, Kathy did not work outside of the home, and Robert supported the family by working as a farm and

gin assistant manager. Robert has a college degree. Kathy does not have a high school diploma or a GED. At the time of trial, Robert's bi-weekly salary was $1,615.38, with a net take-home pay of $1,141.79. At the trial, Kathy testified that she cleaned one house per week, earning $35, and that she was looking for full-time employment.

The parties' only marital debts were owed to Robert's mother, Ruby Jean Boxley. Between 1991 and 1994, Ruby loaned them $17,000 to remodel their house. In return, Kathy and Robert signed a handwritten, notarized document that stated: "We Robert and Lisa Kathleen Boxley owe Ruby Jean Boxley $17,000 on the property at 204 Woody. This is a promissory note to be paid at the time this house is sold. . . ." Ruby later paid their mortgagee $23,603 to release their mortgage. She also loaned them $24,486 for additional remodeling on their house and an additional $16,000 for a truck. Robert and Kathy did not sign any documents evidencing these debts. Robert and his mother both testified that these payments were loans that both parties had agreed to repay, not gifts. According to Ruby, the parties owed her $64,789 at the time of trial. Kathy admitted at trial that she had agreed to pay the $17,000 but denied having agreed to repay the other amounts.

The judge issued a letter opinion on June 6, 2001, which he supplemented on June 14, 2001. He found that Robert was entitled to a divorce on the grounds of general indignities and gave the parties joint custody of their daughter with Kathy to have primary physical custody of her. He ordered Robert to pay $100 per week child support and to provide health insurance for the child.

The judge ordered most of the parties' marital personal property to be sold at public auction and the proceeds to be split equally. He awarded Kathy a one-half interest in that portion of Robert's retirement account that had accrued during the marriage. The judge also permitted Robert to keep his non-marital property, which primarily consisted of a large amount of furniture. The judge directed that the parties' real property be converted to a tenancy in common and awarded Kathy possession of the house so long as she has primary physical custody of the child.

He directed that her right to possession will terminate upon the child's reaching majority or graduating from high school, whichever is later; Kathy's remarriage; Kathy's permitting a non-relative to live there; or Kathy's abandonment of the house. He directed Kathy to be responsible for ordinary maintenance and that the parties equally bear the cost of substantial repairs. He ordered Robert to pay for insurance and taxes on the house and to receive credit for one-half of such payments and for one-half of the monthly rental value of the house when it is sold.

In his June 6, 2001, letter opinion, the judge stated:

> 8. Marital debts: At issue are alleged marital debts which [appellant] contends are owed by both parties to Ruby Jean Boxley for monies advanced by Ruby Jean Boxley towards the pay-off of the marital home, for improvements to the marital home, and for the purchase/pay-off of the aforesaid marital vehicle. In this connection, the Court finds/concludes that on August 1, 1994, both parties executed an evidence of indebtedness to Ruby Jean Boxley for the sum of $17,000.00, which the Court determines to be a lien (as between the parties) on the aforesaid marital residence in the sum of $17,000.00, which lien is to be satisfied/paid at such time as the marital residence is sold prior to dividing the net proceeds of such marital residence sale between the parties. As relates to remaining monies advanced by Ruby Jean Boxley to the parties, the Court concludes that the parties are indebted to Ruby Jean Boxley as an unsecured creditor in the sum of $22,989.50 each. ($82,089.00 total advances less $17,000.00 secured to be paid when house is sold equals $65,089.00 less $19,110.00 payments made equals $45,979.00 divided by two equals $22,989.50 each).

In his June 14, 2001, letter opinion, the judge added:

> 6. REQUEST ON BEHALF OF RUBY JEAN BOXLEY FOR JUDGMENT: The Court declines to render an advisory Opinion as relates to the claim of Ruby Jean Boxley against either of the parties of this case. Ruby Jean Boxley is not a party to this case, has not intervened and this Court will not at this time, in this case, permit an intervention or render judgment in favor of Ruby Jean Boxley except as relates to the establishment of a lien on $17,000.00 of the proceeds of the ultimate sale of the marital home which has been previously addressed.

A commissioner's sale of thirteen items of marital personal property, including the parties' truck, was held on September 10, 2001. At that sale, Ruby bid a total of $8,450 for twelve of the items, including the truck. Her bid read as follows: "As payment of the bid price, she releases Robert Boxley and Kathy Boxley from paying her the sum bid, that to be deducted from the sums Robert Boxley and Kathy S. Boxley owe her, as adjudicated on the Court's decree of May 1, 2001." On September 20, 2001, the judge refused to confirm the sale, stating: "The Court does not consider the bid of Ruby Jean Boxley to conform to Arkansas law concerning purchasing property at public sale. The Court would not confirm the sale without the consent and approval of [appellee]."

### Marital Debts

Appellant does not challenge any of the judge's findings of fact, including his finding that, in addition to the $17,000 represented by the promissory note, the parties owe Ruby $45,979. In appellant's first point on appeal, he argues that the judge erred in dividing this debt equally between the parties because, as the only party with an income, he will surely be required to pay the entire debt, which appellant asserts is inequitable.

Although the division of marital debt is not addressed in Arkansas Code Annotated § 9-12-315 (Repl. 2002), the judge has authority to consider the allocation of debt in a divorce case. *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993); *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). In fact, this court has stated that an allocation of the parties' debt is an essential item to be resolved in a divorce dispute. *Ellis v. Ellis*, 75 Ark. App. 173, 57 S.W.3d 220 (2001); *Warren v. Warren*, 33 Ark. App. 63, 800 S.W.2d 730 (1990). A judge's decision to allocate debt in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Anderson v. Anderson, supra.*

Further, the allocation of marital debt must be considered in the context of the distribution of all of the parties' property. *See Hackett v. Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982). Arkansas Code Annotated section 9-12-315 does not compel

mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). The statute vests the judge with a measure of flexibility and broad powers in apportioning property, nonmarital as well as marital, in order to achieve an equitable distribution; the critical inquiry is how the total assets are divided. *Id.* The overriding purpose of the property division statute is to enable the court to make a division that is fair and equitable under the circumstances. *Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986); *Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 443 (1990). The judge's findings as to the circumstances warranting the property division will not be reversed unless they are clearly erroneous. *Dunavant v. Dunavant*, 66 Ark. App. 1, 986 S.W.2d 880 (1999). We will not substitute our judgment on appeal as to what exact interest each party should have; we will decide only whether the order is clearly wrong. *Pinkston v. Pinkston*, 278 Ark. 233, 644 S.W.2d 930 (1983).

█ █ A judge's determination that debts should be allocated between the parties in a divorce case on the basis of their relative ability to pay is not a decision that is clearly erroneous. *Richardson v. Richardson*, 280 Ark. 498, 659 S.W.2d 510 (1983); *Ellis v. Ellis, supra; Anderson v. Anderson, supra.* Given the disparity between Kathy's and Robert's earning powers, the allocation of debt in this case was not clearly erroneous. We affirm the judge's decision to hold the parties equally responsible for the debt to Ruby.

█ Appellant also contends that the judge erred in finding each party separately liable for only one-half of the debt to Ruby because he had no authority to determine the validity of a debt to a third party who is not a party to the lawsuit. Appellant is correct that a judge has no authority to decide the validity of an obligation to a third party who is not a party to the divorce. *Arnold v. Spears*, 343 Ark. 517, 36 S.W.3d 346 (2001); *Grace v. Grace*, 326 Ark. 312, 930 S.W.2d 362 (1996); *see also Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989). Third parties may be brought into, or intervene in, divorce actions for the purpose of clearing or determining the rights of the spouses in specific properties. *Copeland v. Copeland*, 2 Ark. App. 55, 616

S.W.2d 773 (1981). As the judge noted, Ruby did not intervene in this action. Therefore, the judge had authority only to determine Robert's and Kathy's obligations, as to each other, in regard to this debt. We stress, however, that the judge did have the authority to allocate responsibility for this debt as between the parties.

▮ Appellant also argues that this court should modify the decree to make all of the debt to Ruby, instead of only the $17,000, payable out of the proceeds of the sale of the house. We disagree. Although she could have required that she be granted a lien on the house simultaneously with making the loans or she could have intervened in this action to protect her interests, Ruby did neither. Additionally, Robert would have a claim against Kathy for any amount over his one-half share of that debt that he might be required to pay to Ruby and could seek the judge's assistance in making Kathy meet her obligations under the decree.

### The Commissioner's Sale

▮ In his second point, appellant argues that the judge erred in refusing to confirm the commissioner's sale at which Ruby sought to purchase twelve items by granting the parties a partial release of her debt "which the court adjudicated that the parties owed the creditor." Appellant also contends that it would be a waste of money and judicial effort to require Ruby to adjudicate this debt in a separate lawsuit. Arkansas Code Annotated section 16-66-413(a) (1987) provides that bids at commissioners' sales may be made on three months' credit, upon the purchaser's giving of "bond and good security." In subsection (b), that statute provides for the making of such bids in cash. It is clear, therefore, that Ruby, as a creditor seeking to bid with a credit against her unadjudicated claim, did not meet either provision of this statute. We affirm the judge's refusal to confirm the commissioner's sale.

Affirmed.

JENNINGS and GRIFFEN, JJ., agree.