SLIP OPINION

Cite as 2014 Ark. App. 340

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-1064

| | |
|---|---|
| | **Opinion Delivered** May 28, 2014 |
| DEANNA GAYLE SMITHSON<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60DR2013-18] |
| V. | |
| | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| VERNON TODD SMITHSON<br>APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

In this appeal following divorce proceedings, appellant Deanna Smithson contends that the Pulaski County Circuit Court clearly erred in awarding her one year of $1000 per month in rehabilitative alimony from appellee Vernon Todd Smithson. She had requested alimony in the amount of $3000 per month for fourteen years. On appeal, she contends that the trial court erred by failing to take judicial notice of her Social Security disability determination; by failing to bar appellee from contesting her disability status under the principle of collateral estoppel; and by failing to award appellant a greater amount of monthly alimony for a longer period of time. Appellant's first two arguments are not preserved for our review, and her final argument does not persuade us that the trial court abused its considerable discretion. Consequently, we affirm.

The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). A circuit court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Delgado v. Delgado*, 2012 Ark. App. 100, 389 S.W.3d 52. The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Id.* The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, in light of the particular facts of each case. *Spears v. Spears*, 2013 Ark. App. 535. The primary factors are the financial need of one spouse and the other spouse's ability to pay. *Id.* Other factors are the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.* The need for flexibility outweighs the need for relative certainty in assessing alimony. *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408. If alimony is awarded, it should be an amount that is reasonable under the circumstances. *Id.*

This was a marriage of about seven years. At the end of the marriage, appellant was in her late forties, and appellee was in his early fifties. The parties shared no children, although appellee has two sons whom he supported. The parties married on December 31, 2005, and separated in November 2012 when appellant left on a trip and did not return.

Appellee filed a complaint for divorce in January 2013 on the grounds of general indignities, which appellant ultimately did not contest. Appellant was paid temporary alimony of $786 per month pending the final divorce hearing. Appellee retained possession and use of the marital home as well as the attendant responsibilities for it. The trial court heard the evidence in July 2013, and a decree was filed in August 2013, from which appellant appeals.

The evidence included the testimony of appellee, who said that he purchased his home in west Little Rock in the summer of 2004, prior to the marriage. He recited the first mortgage and equity-credit line against the home, and he did not believe there to be much equity in the home. Appellee held a college degree and had worked in the information technology industry for thirty years as an account and territory manager for Presidio Network Solutions. His tax returns and W–2s showed an income range of $120,000 to $141,000 in the previous three years.

Appellee complained that appellant "used her medical condition to get attention or pity," did not help with paying the bills, and left it to him "to do most of the house and yard work." He said that appellant would sit around in her pajamas all day, watching television or spending time on the computer. When she did get dressed, it was for shopping or to run errands. Otherwise, she would travel to see her family in Texas. Appellee stated that appellant worked during the early part of their marriage as a veterinary technician but that she quit working in 2006, contributing nothing financially to the marriage. He believed her to be capable of working although she became more debilitated around 2006, and he agreed that he supported her application for Social Security disability at that time. He said that she

3

was presently working for an electronic card and gift service. Appellee said that the only assets jointly owned were vehicles and some financial accounts that were attributable to his efforts, that they incurred credit-card and vehicle debts, and that he was servicing virtually all the debts to run their household.

Appellant, then age forty-eight, testified that she was living in Conway, Arkansas, with friends. She said that she owed them rent that she had not paid. Appellant said that her three dogs were like her children and she loved her two birds, but having five pets made finding her own housing difficult. She said that she first was awarded Social Security disability in 2009, although she was given a large lump-sum back-pay of $10,000 to cover her disability back to 2006 when she quit working. Appellant said she had long since spent that lump sum and her monthly disability checks as they were paid to her. Her Social Security disability approval paperwork was admitted into evidence without objection.[1] Appellant was receiving $719 per month in disability income after Medicare was deducted, and she paid $89 per month for a Blue Cross Blue Shield drug plan. Appellant said she received $786 per month in temporary alimony following their separation. She had not worked, except occasionally in a home-based business, and did not feel that she was capable of working.

---

[1]This notice of decision from the Social Security Administration was dated March 26, 2009, and it recited a favorable decision from an administrative law judge on appellant's claim of being disabled from and after November 1, 2006. It listed her impairments as fibromyalgia, degenerative disc disease, osteoarthritis, and dysthmic disorder. It noted that appellant had residual functional capacity to perform sedentary work with accommodations. The decision recites that medical improvement in appellant's condition was expected with appropriate treatment and that a review of her status was recommended in twenty-four months.

Appellant agreed that she and appellee were not married when the west Little Rock home was purchased, but she said that they were living together and had purchased it as their home as a couple. She signed documentation for an equity-credit loan during the marriage that remained unpaid. She felt entitled to any equity gained in the home. She planned to stay in Conway, where her pain-management physician and psychiatrist were located. She admittedly did not bring a doctor to testify as to her incapacity to work, but she presented medical records to substantiate that she had medical and emotional problems. Appellant had not tried to find a job, and she said she had only a high school diploma and college training to do massage therapy, which she could not do because of her ailments.

Appellant described a cervical disc fusion in 2009 that was necessitated by a fall down the stairs at West End Smokehouse Grill, where she worked as a waitress for a few months over 2002–2003 and where she met appellee. She said that she had also been diagnosed with fibromyalgia. Appellant stated that she had degenerative disc disease in her whole spine, a secondary herniation, chronic pain, anxiety, and severe depression. Appellant said she took pain medications, cortisone injections, antidepressants, anti-anxiety medication, hormone medication, anti-fatigue medication, and antacids. She took part in water therapy and massage therapy, and she used a device to keep her from teeth-clenching. She felt berated and unhappy in the marriage to appellee, who she said was a heavy drinker, and she said that she helped around the house to the extent she was physically and emotionally able.

Both parties submitted affidavits of financial means for the final hearing. Appellee listed $5176 in monthly expenses for food, the mortgage payment, utilities, telephone, clothing, life

and health insurance, medical costs, transportation costs, and the like. Appellant listed $4365 in monthly expenses, which included estimated monthly costs of $1330 for "medical" and "drugs," $90 for massages, $135 for hair expense, $280 for water therapy co-pays, and $180 for pet-related expenses.

Appellant stated that she was asking for $3000 per month in alimony until appellee retired from his job, which would be another fourteen years. Appellant admittedly transferred $13,000 out of a joint account in January 2013, explaining that she had no income and that appellee had "shut off" the American Express and Discover credit cards after she left. She said she owed her father about $7000, she owed $4000 in back-due rent to her friends, she owed several thousand dollars in attorney fees, and that she did not have enough money to support herself, nor could she work.

At the conclusion of the hearing, the trial judge announced his decision, granting appellee a divorce from appellant and noting that appellant had "legitimate medical issues" substantiated by her medical treatment and demeanor. The judge found that the home was nonmarital but ordered appellee to pay $10,000 to appellant as her portion of its increased value during the marriage; that the personal-property taxes would be paid 75% by appellee and 25% by appellant; each were awarded the vehicles in their possession and the attendant debt; credit-card debt of approximately $7300 was evenly divided; an approximate $1049 medical debt of appellant's was ordered divided; marital portions of sizable investment and retirement accounts were ordered divided; appellant was awarded $1000 per month in alimony for one year; and appellee was ordered to pay $2000 of appellant's attorney's fees and

$2000 of her accrued rental debt. Appellant's last name was restored to Thornburg. The parties subsequently agreed, and the trial judge approved, that appellee would be solely responsible for the personal-property taxes and credit-card debt.

Appellant argues on appeal that the trial court should have taken judicial notice of her Social Security disability approval for purposes of establishing her inability to work; that appellee was collaterally estopped from claiming that appellant was not totally disabled; and that the trial court's alimony award is inadequate in amount and duration, evidencing an abuse of discretion. We disagree that appellant presents any reversible error.

First, we dispose of appellant's contention that the trial court erred by failing, sua sponte, to take judicial notice of appellant's Social Security disability determination. Appellant admittedly did not ask that the trial court take judicial notice of the disability determination. Appellant cannot establish error on an evidentiary matter that she failed to raise to the trial court. *See S. College of Naturopathy v. State ex rel. Beebe*, 360 Ark. 543, 203 S.W.3d 111 (2005) (appellant failed to preserve argument that trial judge erred by failing to take judicial notice where it was never requested of the trial court). *See also Taylor v. Taylor, supra.* Nonetheless, appellant was permitted to introduce the Social Security disability determination into evidence as her Exhibit 9 for purposes of attempting to establish her inability to work. Appellant successfully presented the evidence that she sought the trial court to consider, failing to establish any basis for reversal on this argument.

In her next argument, appellant contends that appellee was "collaterally estopped" from asserting that appellant could work by virtue of his support of her application for federal-

disability benefits. Appellant never raised a collateral-estoppel argument at the trial court level. Appellant never objected to appellee's testimony on the issue of appellant's ability or inability to work, and in fact, appellee was cross-examined by appellant's attorney on this topic. Thus, the collateral-estoppel argument is likewise not preserved for appellate review. *See Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005) (failure to raise estoppel before the trial court and obtain a ruling bars consideration of that issue on appeal); *Taylor v. Taylor, supra* (failure to raise an issue to the trial court and obtain a ruling results in lack of preservation of the issue for review on appeal).

The crux of this appeal centers on appellant's assertion that this alimony award is inadequate in amount and in duration. After a de novo review of this record, we hold that she fails to demonstrate an abuse of discretion. The evidence and testimony in this divorce trial surrounded the debts incurred, the responsibility for those debts, division of marital assets, and alimony. A review of the overall distribution here evidences that appellant was awarded $10,000 cash from the nonmarital home's equity, appellant was awarded her marital portion of appellee's retirement and investment accounts, she was relieved of significant marital debt, appellee was ordered to pay half of appellant's accrued rental indebtedness and $2000 of appellant's attorney fees, and both parties were relatively young and were married a relatively short period of time. Rectification of economic imbalances is not necessarily appropriate when the marriage relationship did not influence the imbalances in earning capacity. *Evtimov v. Milanova*, 2009 Ark. App. 208, 300 S.W.3d 110. That appellee came into the marriage, and left the marriage, with significantly greater earning capacity does not automatically equate to

SLIP OPINION

a long-term sizable alimony award.  An award of alimony, if one is awarded at all, is measured by the particular facts and circumstances of the parties before the trial court.  We are not to substitute our judgment for that of the trial court; we are to determine only whether the alimony decision is reasonable under the circumstances.  *Whitworth v. Whitworth*, 2009 Ark. App. 410, 319 S.W.3d 269.  On the record presented for our de novo review, we are not left with a distinct and firm impression that a mistake was made in the award of alimony.

Affirmed.

PITTMAN and WOOD, JJ., agree.

*Owings Law Firm*, by: *Tammy B. Gattis*, for appellant.

*Mylissia M. Blankenship*, for appellee.