

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-942

MICHAEL E. NELSON

APPELLANT

**Opinion Delivered:** September 21, 2016

V.

APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT
[NO. DR-2014-52-2]

JANICE NELSON

APPELLEE

HONORABLE KENNETH JOHNSON, JUDGE

AFFIRMED

## BART F. VIRDEN, Judge

The parties in this case divorced after thirty years of marriage. Appellant Michael Nelson argues that the circuit court erred in awarding permanent alimony of $2500 per month to appellee Janice Nelson. Michael also asserts that the circuit court erred in unequally distributing the marital property in favor of Janice and in ordering him to pay the greater share of the marital debt. We find no error, and we affirm.

### I. *Facts*

On April 10, 2014, Janice Nelson filed for divorce on the ground of general indignities. Janice requested $4500 per month in alimony and for the court to divide the property and debt. Michael Nelson counterclaimed for divorce, and he requested that Janice's complaint be dismissed. Michael also requested that the circuit court equally divide the property and the debt. Janice filed an amended complaint for divorce on December 10,

2014, alleging adultery and again requested alimony and for the circuit court to divide the property. Michael waived corroboration of grounds.

On April 14, 2015, Michael filed an answer and counterclaim asserting general indignities as grounds for the divorce. He asserted that Janice was a beautician and could derive substantial income from pursuing that career. Michael stated in his complaint that he was unemployed and "lacked ready cash" to pay alimony. He also argued "unclean hands" and that Janice admitted to having had an affair while they were married. Michael also claimed that if the affair had not actually occurred, then Janice committed "intentional fraud in the infliction of mental or emotional distress" by lying about the affair. Michael also asserted that Janice had not stated why she was entitled to alimony.

In her response, Janice denied having had an affair. In an amended complaint, filed on April 20, 2015, Janice stated that she should be awarded alimony because during their thirty-year marriage, Michael had been the primary source of income, with a salary over $200,000 for the past five years. By contrast, her income was around $20,000. She alleged that he had the ability to pay and significantly more education and ability to earn than she did.

On May 15, 2015, the circuit court held a hearing on the matter. Janice testified that she was the caregiver to her six-year-old granddaughter and that she did not receive child support from the child's parents. She testified that she was a licensed beautician, and she had worked off and on during their marriage; however, most recently and at the time of the hearing, she was the secretary for the City of Warren. Janice testified that she made around $18,000, and she was receiving food stamps. She testified that her monthly expenses

were around $3500, not including credit card debt, and that her monthly income was around $1500. Michael had been sending her money to pay bills since they separated, but he had ceased sending money in the spring of 2015.

Janice testified that in 2014 Michael spent $13,000 on his girlfriend in one nine-day period; $6000 on jewelry another time; and $3200 during a trip the two took together. She stated that Michael had also bought his girlfriend's son a car. Janice also testified about the equity in their three homes and about the debt remaining on each of the homes. Janice testified that she had not had an affair but told Michael that she had in order to upset him.

At the hearing Michael testified that due to the nature of his work as a computer consultant, he had lived mostly in hotels over the years which were paid for as part of his work contract. He had become tired of living in hotels and had recently opted to live in a lake house and that his portion of the rent had been $450 a month.  At the time of the hearing he was living with friends. Michael estimated that he owed $200,000 on delinquent income taxes from 2013 and 2014. Michael testified that he would have his current salary for four months after the hearing and that he had been offered a job in Orlando for $120,000 a year including moving expenses. Michael stated that his prospects for work were good, just not as good as they had been due to outsourcing his type of work to other countries. Tax returns confirmed that Michael's income had been over $250,000 in 2009 and 2011.

Michael admitted to the affair with Tina Martin and that he had spent around $45,000 on her and her family in 2013–2014.

On August 21, 2015, the circuit court entered its order.  The circuit court granted the divorce to Janice on the ground of adultery. It awarded the marital residence in Warren

to Janice with the instruction that she would assume the mortgage of $37,000. The circuit court found that the equity in the marital home was $73,000. Michael's mother's residence was awarded to Michael, and the circuit court found that the debt remaining on that house was $16,000 and that it had equity of $59,000. The circuit court awarded Janice's parents' home to Janice with the debt remaining on that house at $13,000 and the equity amounting to $17,000. The court recognized that the division of the property was unequal and noted that in apportioning the property it considered the amount of money from the marital assets that had been spent on Michael's girlfriend and her family. The circuit court also took into account the fact that Michael had taken the contents of a marital bank account. Both parties were awarded their cars and personal belongings. Michael received his boat and boat trailer and his motorcycle and its trailer. Michael was awarded the balance of the Bank of America account and half of the AFCU account as well.

The circuit court found that on average over the past five years, Michael had earned around $250,000 per year, and Janice had earned around $18,000 per year. The circuit court noted that Janice was currently the secretary for the City of Warren and was receiving food stamps to supplement her income. During the marriage Janice had primarily been a housewife, and Michael had been, and was currently, a computer technology consultant. The circuit court found that though Michael had been unemployed for a time, he had been rehired at the same salary as before, and was employed at the time of trial. The circuit court found that Michael had good earning potential.

The circuit court noted that Janice had filed her own taxes for 2014 and that Michael had failed to file taxes for 2013 and 2014. The circuit court found that Janice had no way of addressing the tax liability; thus, Michael would be solely responsible for his unpaid taxes.

Janice was awarded $2500 a month in lifetime alimony. In awarding alimony, the court considered the need of one spouse and the ability to pay of the other spouse:

> [I]n light of the specific facts of this case and also the secondary factors of the financial needs and obligations of both parties' past standard of living; the income, current and anticipated, of the parties; the earning capacity of the parties; the disposition made of the marital jointly owned residence; the amounts if which will be available after the entry of the Decree to each of the parties for the payment of living expenses and the length of the marriage.

The court iterated the "gross disparity in earning capacity and actual historical income production of the parties" as the basis for its award of alimony. Janice was also awarded $1500 in attorney's fees.

On August 28, 2015, Michael filed his notice of appeal. On September 4, 2015, the divorce decree was entered. Michael filed an amended notice of appeal on September 18, 2015. On appeal Michael asserts that the circuit court erred in awarding permanent alimony, that it erred when it determined the amount of the alimony, and that the circuit court erred when it unequally distributed the property and the debt. We find no error and affirm.

## II. *Arkansas Supreme Court Rule 4-2(a)(6)*

Before we reach our discussion of the merits of this case, we must address an issue arising from Michael's statement of the case. Arkansas Supreme Court Rule 4–2(a)(6) requires a concise statement of the case without argument. The statement of the case should be sufficient to enable the court to understand the nature of the case, the general fact situation, and the action taken below. *Boykin v. Crockett Adjustment Ins.*, 2012 Ark. App.

685, at 1. Here, Michael's statement of the case impermissibly contains argument. Michael makes an argument concerning the unequal distribution of property, the award of alimony, and he makes an accusation against the circuit court that it issued a "classic one-sided judicial opinion where one party gets the proverbial gold mine, and the other receives the entrance to the mine." We caution counsel to refrain from such statements in the future because they are prohibited by our rules and inappropriate.

### III. *Points on Appeal*

### A. The Duration and the Amount of Alimony

Appeals of domestic-relations proceedings are reviewed de novo. *Wadley v. Wadley*, 2012 Ark. App. 208, at 2, 395 S.W.3d 411, 413. The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal, absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 34, 250 S.W.3d 232, 235 (2007). It should also be noted that the division of marital property and an award of alimony are complementary devices that a circuit court may employ to make the dissolution of the marriage financially equitable. *Webb v. Webb*, 2014 Ark. App. 697, at 3—4 , 450 S.W.3d 265, 268—69. There can be no abuse of discretion, and a circuit court's decision regarding these issues cannot be overturned unless it can be demonstrated that it exercised its discretion improvidently or thoughtlessly without due consideration. *Smithson v. Smithson*, 2014 Ark. App. 340, 436 S.W.3d 491.

An award of alimony is not mandatory but rather is discretionary, and the circuit court's decision regarding any such award will not be reversed on appeal absent an abuse of that discretion. *Smithson, supra*. This court has recognized that a circuit court is in the best

position to view the needs of the parties in connection with an alimony award. *Id.* The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, in light of the particular facts of each case. *Id.* The primary factors are the financial need of one spouse and the other spouse's ability to pay, but other factors are the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.* The need for flexibility outweighs the need for relative certainty in assessing alimony. *Id.* If alimony is awarded at all, it should be an amount that is reasonable under all the circumstances. *Id.*

First, Michael argues that alimony is always modifiable, and that an award of "permanent" alimony potentially runs afoul of amendment 80 to the Arkansas Constitution. He is correct in part. Alimony is always subject to modification. In *Vigneault v. Vigneault*, 2010 Ark. App. 716, at 8, 379 S.W.3d 566, 571, a post–Amendment 80 case, our court held that the circuit court's award of permanent alimony was not in error and that the issue of alimony could be revisited:

> The parties in this case are in their mid-fifties and are divorcing after a long-term marriage. Appellant has a high-paying job, and during the marriage, the parties enjoyed a comfortable lifestyle. On the other hand, appellee's best earning potential is limited to an eleven-dollar-per-hour job. Given the parties' ages, their respective earning capacities, the length of the marriage, and their married lifestyle, we can find no abuse of discretion in the trial court's *decision not to limit the duration of the alimony award*. As observed by the circuit court, appellant can seek modification of the award should there be a change in circumstances.

(Emphasis added.)

Michael's argument that the circuit court's award of permanent alimony should be reversed "as a matter of law" is not well taken. While Michael is correct that there is no such animal as "permanent" alimony, the nomenclature employed by the circuit court does not constitute error. As set forth in the case above, "permanent"-or as in the present case "lifetime"-alimony is just another way of saying that the circuit court has chosen not to limit the amount of time a spouse should receive alimony. We find no error, and we affirm.

Michael also contests the amount of the alimony award. Our court has never reviewed an award of alimony solely on a mathematical-formula analysis. *Kuchmas v. Kuchmas,* 368 Ark. 43, 46, 243 S.W.3d 270, 272 (2006) (holding that the amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty). Here, because the circuit court considered the income and earning capacity of both parties, the assets of both parties, their needs and obligations, their past standard of living, and the length of the marriage, we hold that the amount of alimony awarded by the circuit court was not an abuse of discretion, and we affirm.

### B. Unequal Distribution of Property and Debt

Michael contends on appeal that the circuit court erred when it unequally distributed the marital property. This court reviews division-of-marital-property cases de novo; even though we do so, we will not reverse the circuit court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence. *Kelly v. Kelly*, 2014 Ark. 543, at 5–6, 453 S.W.3d 655, 660. The division of property itself is also reviewed, and the

same standard applies. *Id*. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id*. In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *Id*.

A circuit court is required to divide the marital estate in a manner that is equitable, but we do not require mathematical precision in doing so. *Coatney v. Coatney*, 2010 Ark. App. 262, 377 S.W.3d 381. Arkansas Code Annotated section 9–12–315 (Repl. 2015) requires that the circuit court equally divide marital property between the parties unless the circuit court finds such a distribution inequitable. If the circuit court finds that an unequal division of the property is appropriate, the court shall make some other division that the court deems equitable taking into consideration (i) the length of the marriage; (ii) age, health, and station in life of the parties; (iii) occupation of the parties; (iv) amount and sources of income; (v) vocational skills; (vi) employability; (vii) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (viii) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (ix) the federal income tax consequences of the court's division of property. *Id*.

When property is divided pursuant to the foregoing considerations, the circuit court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the circuit court's order. *See* Ark. Code Ann. § 9–12–315(a)(1)(B).

Here, the circuit court stated that it recognized that it was unequally distributing the property and that "the court has also considered the amount of money from marital assets defendant has spent on his girlfriend, Tina Martin, as well as his recovery of the balance in the Bank of America account as of December 31, 2014." Michael testified that he spent about $45,000 of marital funds on his girlfriend, and the circuit court found that bank account had contained about $16,000 when Michael obtained the balance; those two figures totaled about $61,000. Janice received $90,000 in real-estate equity and Michael received $59,000-a difference of $31,000 in assets. Michael asserts that the circuit court's findings concerning the inequitable division of property were inadequate, arguing that "the only explanation offered by the trial court was its statement that it had considered the money spent on his girlfriend, Tina Martin, as well as the balance in the Bank of America account . . . ." Indeed, the circuit court found that Michael actually ended up ahead by about $30,000 in light of the $45,000 in marital funds spent on Martin and her family and in light of the $16,000 left in the bank account when Michael took possession of it. Furthermore, the circuit court discussed in its order the great disparity in the parties' incomes, Janice's reliance on food stamps, Michael's level of education as compared to Janice's, and Michael's and Janice's respective roles during the marriage as breadwinner and housewife.

In light of the above findings, we cannot say that the circuit court's explanation is inadequate or insufficient. While the circuit court must consider the factors set forth in the statute and state its reasons for dividing properly unequally, it is not required to list each factor in its order or to weigh all the factors equally. *See Kelly*, *supra; Bamburg v. Bamburg,* 2011 Ark. App. 546, 386 S.W.3d 31; *Hernandez v. Hernandez,* 371 Ark. 323, 265 S.W.3d

746 (2007). Furthermore, the specific enumeration of the factors within the statute does not preclude a circuit court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *Brown v. Brown,* 373 Ark. 333, 284 S.W.3d 17 (2008). The statute requires the circuit court to explain its reasons for not dividing the marital property equally, and the circuit court did just that. We affirm the circuit court's unequal division of the marital property.

Michael also challenges the circuit court's unequal division of the marital debt. A circuit court's decision to allocate debt to a particular party or in a particular manner is a question of fact, and we will not reverse the finding on appeal unless it is clearly erroneous. *Fields v. Fields*, 2015 Ark. App. 143, at 3, 457 S.W.3d 301, 304. While Arkansas law requires the circuit court to distribute half of the parties' marital property to each party unless the court finds such a division to be inequitable, there is no presumption that an equal division of debts must occur. *Id*. The circuit court has authority to consider the allocation of debt in the context of the distribution of all of the parties' property. *Id*. The overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable under the circumstances. *Boxley v. Boxley,* 77 Ark. App. 136, 142, 73 S.W.3d 19, 23 (2002). The court's findings as to the circumstances warranting the property division will not be reversed unless they are clearly erroneous. *Id*. We will not substitute our judgment on appeal as to what exact interest each party should have; we will decide only whether the order is clearly wrong. *Id*.

SLIP OPINION

Here, the circuit court found that Janice, who earned around $18,000 per year and had to rely on food stamps, had no ability to pay the delinquent income taxes from Michael's salary, which the court found averaged around $250,000 during that time. In allotting the debt, the circuit court also considered Janice's primary role as a caretaker of the household and the children during their marriage and Michael's role as the breadwinner. The circuit court found that Michael had "demonstrated a resourceful ability to earn substantial amounts of money[.]" In light of the circuit court's consideration of the facts of this case, we cannot say that its division of marital debt was clearly erroneous, and we affirm.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Parker Law Firm*, by: *Tim S. Parker*, for appellant.

*Wynne Law Firm*, by: *Tom Wynne*, for appellee.