

# ARKANSAS COURT OF APPEALS
DIVISION III
№. CV–16–689

FRIEDRICH BRIAN BECK

APPELLANT

V.

TARA ANET BECK

APPELLEE

**OPINION DELIVERED:** MAY 17, 2017

APPEAL FROM THE PERRY COUNTY CIRCUIT COURT
[NO. 53DR-14-71]

HONORABLE MACKIE M. PIERCE, JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Judge

Friedrich Brian Beck (Brian) appeals the Perry County Circuit Court's order of April 14, 2016, which awarded attorney's fees, costs, and alimony to appellee Tara Anet Beck, and the December 31, 2015 divorce decree. Brian's three points on appeal are that the trial court erred by (1) finding any marital interest in B&B Construction and Specialties, Inc.; (2) awarding permanent alimony to Tara after the final decree was entered; and (3) awarding substantial attorney's fees to Tara. We affirm.

Tara filed for divorce on July 14, 2014, based on the ground of general indignities. The parties have one daughter, born in 2003, and Tara sought custody, child support, and temporary spousal support. After Brian had filed his answer, a temporary hearing was held on September 17, 2014, and the trial court filed an order on October 22, 2014, finding that the parties agreed that Tara would have custody of their daughter and ordering Brian to pay $262.10 per week in child support and their daughter's school tuition and expenses

retroactive to July 14, 2014. Tara was also awarded spousal support of $400 per month retroactive to July 14, 2014.

Tara amended her complaint for divorce on May 15, 2015, adding a request for alimony. The divorce hearing took place over three days—May 20, May 22, and October 21, 2015. Tara testified that she had lived in Perry County since early July 2014, her residency was corroborated by Debra Bradley (Tara's mother), and Brian waived corroboration of grounds on the record. Tara and Brian had lived together prior to their marriage in 2000. She said that when they met and moved in together Brian was doing commercial-carpentry finishing work and that he had not yet incorporated his business. She said that he had worked from the dashboard of his truck back then but later set up an office with a fax machine in her house on Rupert Drive in Conway. After their marriage, their daughter was born in 2003, and tuition for her private school was $7050 for the 2015–2016 school year, not including books, uniforms, or supplies. Tara testified that she worked in Conway as a pharmacy technician making around $19,000 per year, and she planned to move from the travel trailer where she had been living since the separation.

Tara said that while they cohabited prior to marriage, she and Brian discussed that, for the business to be more profitable, they needed to directly bid on the construction jobs. B&B Construction and Specialties, Inc. (B&B), was incorporated on February 22, 1999, prior to their marriage on May 18, 2000. The articles of incorporation reflect the business address for B&B as 3975 Rupert Drive, the address where they had lived together from August 1997 to November 1999, when they moved to property they had purchased together. Tara introduced evidence that the secretary of state had documents that listed her

SLIP OPINION

as the secretary of B&B in 2014 and 2015. She worked at B&B off and on through the years until 2008 when she sought work outside the home and B&B. She explained that when they sold their properties, whether their home, office, or speculation houses, the proceeds would be placed into B&B. The tornado that hit on April 27, 2014, destroyed the buildings that housed the business. Insurance covering both property and equipment was roughly $260,000. The business has since relocated.

Tara testified that after her daughter was born, she gave Brian her power of attorney so that he could handle all their business dealings. She revoked that on July 17, 2014, after she had filed for divorce. They sold their property where the business and house had been located for $275,000, and an attached piece of property sold for $48,000; and those moneys were divided equally between her and Brian. The parties had bought property on Lake Overcup that once belonged to Brian's family, and they paid the mortgage off in 2006. She said that her name had been on the mortgage, but her name was not on the warranty deed. She also testified about property in Woodruff County that Brian had purchased, and she detailed her expenses and debts for the trial court.

Brian testified that he began working in carpentry in 1991 when he was twenty-one years old doing business as B&B Construction. He had learned his trade while working with his father, and he began with residential work. He named the company B&B, which stood for Beck & Beck, because he planned to work with his father in the business. He said that he incorporated in 1999, adding Specialties, Incorporated to the end of the name of his business. Brian testified about the growth of his business from 1999, its slump in 2009, and then its up-and-down business health since then. He also testified about the properties that

they had each owned prior to marriage and what they owned together after their marriage. Brian's salary had remained consistent at around $84,000 per year, but the distributions from B&B had ranged from $61,000 to $101,000.

At the conclusion of the hearing, the trial court took the matter under advisement and issued a divorce decree on December 31, 2015. The trial court found that Tara was entitled to a divorce, that the parties were awarded joint legal custody with Tara having primary physical custody, and that visitation would be as agreed by the parties. Brian was ordered to pay child support of $203.60 per week based on an imputed income of $1500 per week and after giving him credit for the child's school tuition at the rate of $7050 per year. The trial court valued B&B at $265,915, based on the expert testimony offered at the final hearing and further found that the business was jointly and equally owned by the parties and that Tara was entitled to a one-half interest. The trial court awarded Brian ownership of B&B and gave Tara a $132,957.50 judgment against both the stock and Brian's interest in the company.

The trial court awarded to Brian the three parcels of real property owned by the parties—B&B business property located at Highway 89; the Lake Overcup cabin; and the Woodruff County property. The decree divided their various accounts and personal property, and it also provides as follows:

13. Payments to [Tara]: The Court finds that [Tara] has been awarded her one-half interest in B&B Construction and Specialties, Inc., as discussed in Paragraph 8 herein, with said one-half being in the amount of $132,957.50, and her one-half interest in the three parcels of real property, as discussed in Paragraph 10 herein, with said one-half being in the amount of $110,000, for a total monetary award to [Tara] being in the amount of $242,957.50.



> The Court finds and orders that upon entry of this Final Decree of Divorce [Brian] shall pay to [Tara] $110,000 for her interest in the parties' real property, and in turn [Tara] shall execute and deliver to [Brian] a Quitclaim deed for her interest in each parcel of property.

The trial court explained further in Paragraph 13 of the decree that Brian should borrow money based on his interest in the properties and business to pay Tara her share as set forth in the decree, and the decree provides some alternatives for the parties to pursue in that regard. Finally, the trial court reserved the issues of alimony, attorney's fees, and costs.

Tara filed a petition for attorney's fees, costs, and spousal support on February 12, 2016, and on April 14, 2016, the trial court awarded Tara $20,000 in attorney's fees and costs of $1,779.67, to be paid within 180 days of April 1, 2016. Further, the trial court awarded Tara $500 per month for spousal support beginning April 1, 2016, to be paid on the first day of each month until further order. In an opinion letter issued by the trial court on March 31, 2016, it explained that the attorney's fees and costs were awarded

> based upon the financial position of the parties, the time involved in this matter, the complexity of the issues, and the results obtained by [Tara's] counsel on behalf of [Tara]. I am also relying on current case law as well as the Petition and Response filed in this matter.

The trial court explained its reasoning for the award of spousal support as follows:

> The primary consideration in making this award is the need of [Tara] and the ability to pay of [Brian]. I am also basing this award on the current earning capacity of [Tara], the ability of [Brian] to utilize the business awarded him in the divorce to increase his earnings, the length of the marriage, the contribution of [Tara] toward acquisition and appreciation of marital assets, services of [Tara] as a mother and homemaker during the course of the marriage, and the greater opportunity of [Brian] to acquire assets and income in the future.

> I am mindful of the property awarded to the parties by the court in the divorce, but am aware [Brian] will have a greater opportunity to increase his award of marital property versus [Tara's] ability to do the same.

Brian filed a motion for reconsideration on April 29, 2016, seeking the trial court's

reconsideration of the attorney's fees and alimony, arguing that the evidence indicated that

his business was in distress and "in danger of failing." This motion was deemed denied, and

Brian filed a timely notice of appeal on May 13, 2016, from the April 14, 2016 order and

the December 31, 2015 divorce decree.

## I. *Standard of Review*

We recently set forth the applicable standard of review as follows:

> This court reviews division–of–marital–property cases de novo. [*Copeland v.
> Copeland*, 84 Ark. App. 303, 307, 139 S.W.3d 145], 148. With respect to the
> division of property in a divorce case, we review the trial court's findings of fact and
> affirm them unless they are clearly erroneous or against the preponderance of the
> evidence. *Skokos v. Skokos*, 344 Ark. 420, 425, 40 S.W.3d 768, 771–72 (2001). A
> finding is clearly erroneous when the reviewing court, on the entire evidence, is left
> with the definite and firm conviction that a mistake has been committed. *Id*. at 425,
> 40 S.W.3d at 772. In order to demonstrate that the trial court's ruling was erroneous,
> an appellant must show that the trial court abused its discretion by making a decision
> that was arbitrary or groundless. *Id*. at 425, 40 S.W.3d at 772. We give due deference
> to the trial court's superior position to determine the credibility of witnesses and the
> weight to be given their testimony. *Id*., 40 S.W.3d at 772.

*Sanders v. Passmore*, 2016 Ark. App. 370, at 7, 499 S.W.3d 237, 243.

## II. *Division of Property*

Arkansas Code Annotated section 9–12–315 provides that at the time a divorce

decree is entered, all marital property shall be distributed one-half to each party unless the

court finds such a division to be inequitable. Ark. Code Ann. § 9–12–315(a)(1)(A). (Repl.

2015). The statute defines "marital property" as "all property acquired by either spouse

subsequent to the marriage except . . . the increase in value of property acquired prior to

marriage." Ark. Code Ann. § 9–12–315(b)(5).

Brian first argues that because he incorporated B&B prior to the parties' marriage, the business is nonmarital property; therefore, it was not subject to division by the trial court. Brian points to the trial court's comments during its conclusory remarks at the hearing on May 22, 2015:

> The business was incorporated premarital but clearly there's a marital interest here. The majority of your business is a marital interest. There's no doubt about the law on that issue. I've got to try to balance the equities and figure out how I can be equitable and fair to both of you in the division of the marital estate.

Brian argues that the trial court was referring to a line of cases that created an exception to the plain language of the statute that does not allow the increase of value of nonmarital property to be considered marital property. *See Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008); *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006); *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987). That exception was overturned by the Arkansas Supreme Court in *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766, where it was determined that the increase in value of the husband's interest in his company was a nonmarital asset. Brian argues that the trial court's conclusion that a business formed prior to a marriage can be marital property is simply an erroneous conclusion of law, which should be given no deference on appeal. *Hill v. Kelly*, 368 Ark. 200, 243 S.W.3d 886 (2006).

However, Brian's claim on the division of B&B is moot because he waived it by voluntary payment of the judgment prior to his appeal. Before the end of the trial court's sixty-day time limitation for Brian to pay Tara her share, Brian paid her in full on February 4, 2016. Brian argued in response to Tara's postdecree motion for alimony and attorney's fees that the trial court should not award alimony based on his payment. After the trial court filed its order awarding alimony and attorney's fees, Brian filed his notice of appeal on

May 13, 2016. Therefore, Brian's payment of the entire amount was voluntary and constitutes a waiver of this issue on appeal. *Hall v. Hall*, 2012 Ark. 429 (husband's voluntary partial payment of judgment constituted voluntary acquiescence to judgment and waived his right to appeal).

Brian argues that his payment was not voluntary because the trial court gave him a certain time within which he had to pay and that, under *Hall*, this is a key distinction. However, Brian did not file a supersedeas bond or make an attempt to stay the judgment until an appeal could be made. These were considerations used in the *Hall* court's reasoning for determining that the payment was voluntary. The *Hall* court held,

> Here, Justin personally made a substantial payment in accord with the judgment of the circuit court. Furthermore, he made absolutely no reservation of rights and never made an attempt to designate that his payment was going toward only one part of the judgment. Justin presumably could have posted a supersedeas bond, but failed to do so and never presented an argument that he was unable to do so. It appears that the only reason it was a partial payment was because the court gave him additional time to pay the remaining balance. For these reasons, we hold that Justin's payment was a voluntary acquiescence to the judgment against him.

*Hall*, 2012 Ark. 429, at 4. Accordingly, we hold that Brian waived his right to appeal on this issue.

### III. *Alimony*

In regard to alimony, this court has stated,

> Appeals of domestic-relations proceedings are reviewed de novo. *Wadley v. Wadley*, 2012 Ark. App. 208, at 2, 395 S.W.3d 411, 413. The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal, absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 34, 250 S.W.3d 232, 235 (2007). It should also be noted that the division of marital property and an award of alimony are complementary devices that a circuit court may employ to make the dissolution of the marriage financially equitable. *Webb v. Webb*, 2014 Ark. App. 697, at 3–4, 450 S.W.3d 265, 268–69. There can be no abuse of discretion, and a circuit court's decision regarding these issues cannot be overturned unless it

SLIP OPINION

can be demonstrated that it exercised its discretion improvidently or thoughtlessly without due consideration. *Smithson v. Smithson*, 2014 Ark. App. 340, 436 S.W.3d 491.

An award of alimony is not mandatory but rather is discretionary, and the circuit court's decision regarding any such award will not be reversed on appeal absent an abuse of that discretion. *Smithson, supra*. This court has recognized that a circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Id*. The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, in light of the particular facts of each case. *Id*. The primary factors are the financial need of one spouse and the other spouse's ability to pay, but other factors are the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id*. The need for flexibility outweighs the need for relative certainty in assessing alimony. *Id*. If alimony is awarded at all, it should be an amount that is reasonable under all the circumstances. *Id*.

*Nelson v. Nelson*, 2016 Ark. App. 416, at 6–7, 501 S.W.3d 875, 880.

Brian's second argument is that the trial court erred by awarding alimony after the final decree had been entered. The trial court stated that its primary consideration for awarding Tara $500 per month in alimony was Tara's need and Brian's ability to pay. Brian argues that the trial court's error in awarding half of his premarital business is compounded by applying alimony when Tara had already received a forced cash buyout of half a corporation that she did not own.

Brian argues that applying the factors considered in awarding alimony favors reversing the alimony award. Brian first contends that Tara netted significant cash from her marital interest in real estate and bank accounts and received a windfall for half the value of B&B. He claims that he was depleted of cash based on the forced buyouts, and this placed

an additional strain on his business. Second, Brian argues that he and Tara had a modest standard of living. Third, Brian asserts that Tara netted cash from of the buyout of her marital interest in real estate, and he retained the asset but was depleted of cash by the award to Tara.

Fourth, Tara's income is steady from her employment as a pharmacy technician. On the other hand, Brian argues that he employs eight people, and he was forced to perform less lucrative residential work to stay busy; thus, his income is more uncertain than Tara's. Fifth, he claims that the parties had similar resources and assets, but Tara had the strong cash position. Sixth, Brian pays child support, spousal support, two-thirds of the education expenses for their child, and half of the medical expenses; thus, he contends, much of his income goes to Tara. Further, his income was imputed at a rate of $1500 per week when the facts suggest his income fluctuates based on the health of the business. Seventh, he admits that he has significant earning potential but insists that Tara's work is more stable. Brian argues that these factors clearly favor reversing the award of alimony, especially if Tara received the windfall of half the value of B&B.

In its reasoning, the trial court highlighted the earning capacities and needs of the parties. Tara points to the numerous pieces of personal property, including four-wheelers, tractors, mowers, a Chevy van, and a Ford vehicle for which Brian never explained how they related to the business. She contends that Brian wanted the marital assets, which were free of debt, and the trial court awarded them to Brian. She further points to the evidence that the business paid for their cars, gasoline, and medical insurance, none of which she has

access to now. Based on the disparity of their incomes and the evidence presented, we hold that the trial court did not abuse its discretion in awarding alimony to Tara.

IV. *Attorney's Fees*

Brian argues that the trial court erred by awarding Tara substantial attorney's fees. A trial court has considerable discretion in the allowance of attorney's fees in a divorce case, and absent an abuse of that discretion, the fixing of the amount of fees will not be disturbed on appeal. *See Miller v. Miller*, 70 Ark. App. 64, 69–70, 14 S.W.3d 903, 907 (2000). In making this determination, trial courts must consider the relative financial positions of the parties. *Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000). Brian contends that Tara was in a better financial position than he was since the divorce. He claims that the attorney's fee award to Tara created an additional inequity and should be reversed.

The trial court considered Brian's argument that Tara was in a better financial position than he was since the divorce when it awarded her attorney's fees of $20,000 and costs of $1,779.67. Tara's attorney's affidavit stated that Tara had paid $24,059.66 prior to the appeal. The trial court awarded about eighty percent of what was paid by Tara. Based on the record, the trial court's award of fees was not arbitrary or groundless; accordingly, we find no abuse of discretion in the trial court's award of attorney's fees.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellant.

*Branscum Law Offices*, by: *Herby Branscum, Jr.*, and *Elizabeth Branscum Burgess*, for appellee.

