WAYMOND M. BROWN, Judge
Appellant John Williams appeals from the April 18, 2017 amended divorce decree filed by the Montgomery County Circuit Court. The decree granted appellee Patricia Williams a divorce from bed and board, permanent alimony in the amount of $1,100 a month, and a marital car that appellant was ordered to pay for until both the marital home and RV were sold. The decree also prevented the parties from returning to the court for a period of five *479 years to seek modification of the permanent alimony. On appeal, appellant contends that (1) the trial court's award of permanent alimony was an abuse of discretion, (2) the trial court's prevention of the parties from moving to modify the alimony award for five years is contrary to Arkansas law, and (3) the trial court's refusal to enforce the parties' binding agreement regarding the Mazda car payments and alimony was an abuse of discretion. We reverse in part, and reverse and remand in part.
The parties met each other through an online dating site called TAG in January or February 2009. At that time, appellant had just completed a deployment in Iraq and was stationed in Georgia as an IT security specialist and warrant officer for the United States Army. Appellee had a business cleaning residential and commercial properties which she had owned since 1993. Appellant was subsequently transferred to Fort Bliss in El Paso, Texas, and appellee joined him around July 2009, closing her cleaning business. They lived together in El Paso and were married on December 28, 2009. The parties lived in Texas approximately two and a half years, and appellee worked as a cosmetology instructor for a couple of months while there.[1] The parties moved to Augusta, Georgia, in 2011 when appellant was sent to officer training there. After training, appellant was transferred to Tennessee. Appellee worked several months as a cosmetology instructor while in Tennessee. Appellant underwent hip surgery in 2012, and he retired in February 2013.[2] The parties moved to California after appellant's retirement because he was unhappy with the service he was receiving from the VA in Tennessee. Appellee flew to Tennessee while appellant was receiving services in California to get appellant's medical records and to downsize their home. They lived in California for about a year and then returned to Tennessee. They subsequently sold their home, packed up their RV, and moved to Arkansas. Appellee helped clean cabins and haul "wood and stuff" after she moved to Arkansas. Appellant underwent back surgery in November 2015. Appellant left appellee on April 10, 2016, and moved back to California.
Appellee filed a complaint and subsequently an amended complaint for divorce, alleging general indignities. Among other things, appellee requested temporary and permanent alimony, temporary possession of the marital home and her vehicle, that her health insurance be kept current, equitable distribution of the parties' debts and assets, and that the parties' real property be sold and the proceeds divided equally. Appellant filed an answer to appellee's amended complaint and a counterclaim for divorce. A temporary hearing took place on June 13, 2016, and the court entered a temporary order on June 24, 2016, in which it found that appellant's income was the sole income for the family and that he should pay appellee $1,100 a month until the final hearing. The court ordered appellant to pay the parties' vehicle and medical-insurance premiums and the loan for the purchase of the marital home. Appellant was also ordered to return the car to appellee and to retrieve the truck and motorhome. It forbade contact by the parties pending the final hearing.
The final hearing took place on January 17, 2017. Appellee's testimony traced the above evidence concerning how she and appellant met, when they were married, *480 the number of times they moved during the marriage, appellant's surgeries, appellant's retirement from the Army, and when the parties separated. Additionally, she testified that the parties found a little trailer in Arkansas and that she went back to Tennessee to retrieve their belongings. She stated that as she was lifting the dolly up off the back of the motorhome, she tore the muscles away from her chest cavity. She also stated that she had been having problems with her back for which she was treated. She testified that she had bulging discs in her back and a fracture in one of those discs and the joint in the base of her spine. However, she stated that she receives steroid shots for this issue. She said that she suffers from both degenerative arthritis and degenerative disc disease. Appellee stated that her back pain began around 2014 but that it got progressively worse over time. She said that she takes medication for anxiety, high blood pressure, thyroids, nightmares, depression, and pain. She testified that she had no income other than the temporary support appellant was ordered to pay. She denied having any savings, but testified that there was $1,300 in her checking account because appellant had just made his support payment. She stated that she did not have any plan for the future.
On cross-examination, appellee stated that appellant had no plans of leaving the Army when they were married. She said that at the end of 2014, her back pain prevented her from doing the things she wanted to do. She denied working in 2014 or after that time. However, she subsequently admitted that between July and August 2015, she helped clean cabins. She stated that she was forty-five when she married appellant and that she had no retirement at that time because she lost everything in the stock-market crash of 2008. She testified that she was previously married for five years but that she did not receive retirement or any other benefits from that marriage. However, she stated that she made a lot of money. She said that she had filed for Social Security Disability benefits in May 2016 but had been denied. She stated that she appealed that denial and was waiting on the results of that appeal. Appellee admitted that appellant is disabled and unable to work.
On redirect, appellee stated that she was not physically capable of working due to the unbearable pain in her back. She said that she cannot stand or sit long, cannot sweep, and cannot vacuum without taking pain medicine and having to lie down.
Dr. Paula Mercer testified that she is a mental health therapist and that she has treated appellee at Ouachita Behavioral Health and Wellness. She stated that appellee had been diagnosed with PTSD. She said that appellee can improve but that it would take some time. She opined that it was not possible for appellee to currently hold down a job due to the PTSD. She also acknowledged that appellee suffers from back issues.
Dr. Mercer testified on cross-examination that she began seeing appellee on August 31, 2016. She stated that she could not say 100 percent that appellee did not suffer from PTSD before marrying appellant.
Sharon Dyer testified that she used to be appellee's neighbor and had known appellee for seven or eight months. She stated that appellee came to her about a month after appellant left and was hysterical and afraid of being alone. She said that she moved in with appellee for over two months and noticed that appellee would break down each time she received word from anyone about appellant. She stated that appellee was slowly improving but that she still breaks down every time something comes up about the divorce. She testified that appellee was on a lot of medicine. She stated that there was no *481 doubt in her mind that appellee suffers from both mental- and physical-health problems.
On cross-examination, Dyer stated that during the time the parties lived together, she never saw appellant be violent toward appellee, raise his voice, or say something out of the way to appellee.
Cella Green testified that she was a teacher and was familiar with both appellant and appellee. She stated that appellee's "anxiety level has gone through the roof" since appellant left. She said that appellee was always worrying about appellant's well-being. She testified that some days appellee cannot get out of the bed due to either physical pain, emotional pain, or both. Green stated that appellee's physical health had deteriorated since they first met in 2015.
On cross-examination, Green stated that appellant had discussed his PTSD, anger issues, and refusal to take medications in her presence. However, she denied ever seeing appellant act physically violent. She opined that the parties' separation triggered appellee's emotional issues. She stated that she saw appellee ride a four-wheeler before the parties were separated.
Appellant testified that he was honorably discharged from the Army in February 2013. He stated that appellee was engaging in physical activities as late as 2015. He said that when they lived together in Arkansas, appellee would ride the four-wheeler regularly and dig for crystals around the property through April 2016. He stated that he had no knowledge of appellee receiving treatment for her back in 2015 and that during that time she was walking up and down the hill as exercise to help get appellant's back and body back in shape. However, he stated that prior to him leaving in April 2016, he noticed appellee was in a lot of pain when the doctor was realigning her back. He said that he could not say that he had never been physically violent towards appellee but that he had also had to defend himself from blows administered by her. He testified that during the marriage, appellee had issues with mental or emotional stability and that she would yell, curse, and destroy things. He stated that he was unaware if he gave appellee a cause to be fearful of him. He said that on the day he left, appellee indicated that she was planning on working at the Deli, a little shop down the street from where they were living. He stated that they never had a discussion about appellee not being able to work. He asked the court to deny appellee's request for alimony. However, he wanted the property divided equally.
On cross-examination, appellant stated that he received a restraining order against appellee. He admitted that he had been married two other times, and stated that appellee had also been married twice before him. He stated that appellee worked hard taking care of him and helping with his rehab after his surgeries. He testified that his total net monthly income is $6,506.56. He also outlined his total monthly expenses. Appellant stated that he was diagnosed at 70 percent PTSD through the VA.
After the conclusion of appellant's case, appellant withdrew his complaint for divorce and appellee amended her complaint for absolute divorce to a request for a divorce from bed and board. Appellant waived corroboration. The parties reached an agreement as to the property and the stipulated agreement was read into the record. The following pertinent colloquy took place:
MS. SMITH : The parties own a 2002 Dodge Dakota truck as well as a Mazda CX5 car and a 1999 Holiday Rambler Endeavor motorhome as well as a mobile home and 2.25 acres in Story.
APPELLANT : Five acres in Story.
*482 MS. SMITH : Five acres in Story. Some acreage in Story. The real estate will be listed with Pride Realty for $60,000.00 for a period of six months. If the property sells, the proceeds will go first to pay off the mortgage on the home or the loan associated with the home. And, then the balance of the proceeds from the sale of the home and real estate will be divided equally between the parties. Mr. Williams will sell the 2002 Dodge Dakota as well as the motorhome and dolly and the parties will, through counsel, agree to the price on those things and when money is received for them, that money will be split equally between the parties. Mr. Williams will keep his coin collection and tools. Ms. Williams will have all of the items left in the marital home as her personal property. She will also retain the Magrual gun, her cat, and the Rainbow vacuum cleaner. Mr. Williams['s] Track 26 speed bicycle is at the house. Between counsel we will figure out some way to get that to him in California. And, I believe that is it as to property, Your Honor.
MR. GRAHAM : That is correct your honor but there is also a 2015 Mazda CX5 that has $21,000.00 still owed on it, Your Honor. We had discussed that-did she agree?
MS. SMITH : Ms. Williams would like to keep the car. She does not presently have any income to pay for it. If she receives alimony from the Court, she would like a portion of her alimony payment to make that car payment so that she can keep the car and then once the car is paid off, then it will just be straight alimony after that, Your Honor.
MR. GRAHAM : Otherwise the parties sell it and pay off the debt.
MS. SMITH : Ms. Williams, did you hear the stipulations that we entered into the record and is that your agreement?
APPELLEE : Yes.
MR. GRAHAM : Mr. Williams, did you hear the stipulation?
APPELLANT : Yes.
MR. GRAHAM : And, are you in agreement with that?
APPELLANT : Yes.
THE COURT : All right, now, I am going to take the issue of alimony under advisement. I will issue a decision, you will get it in the next couple of weeks. I do not know, since this is not an actual final decree of divorce other than just a divorce from bed and board, you want to wait preparing the final decree until you get my decision on the alimony?
MS. SMITH : I will, Your Honor.
THE COURT : Is that all right, Mr. Graham?
MR. GRAHAM : That is fine.
The court issued a letter opinion on January 24, 2016, granting appellee $1,100 in alimony "for the next five (5) years." The opinion indicated that appellant had a net monthly income of $6,506.56 ($1,772.66 retirement, $3,068.90 VA disability, and $1,665 social security) with monthly expenses totaling $5,299.92.[3] Appellee's counsel was responsible for preparing the final order. Prior to preparing the order, appellee's counsel wrote a letter to the *483 court asking it to clarify a portion of the letter regarding its ruling on the matter. In the letter, she asked that appellant be required to make the temporary payments he was previously making until the marital house and RV were sold. She also asked the court to reconsider the amount of appellee's alimony award and adjust it upward to reflect the decrease in appellant's monthly expenses once the RV and home are sold.
The court responded by letter on January 31, 2017, indicating that it did not address the issue of continued payments of the marital debts because it was not asked to do so. However, it stated that appellant would be responsible for paying the automobile and house payments until the house and RV were sold. It also indicated that appellant would remain responsible for the car insurance and appellee's health-insurance premiums. It declined to grant appellee's[4] request to adjust appellant's alimony payments maintaining that the " 'resulting increase' does not factor in any future potential equity the parties may receive, if any, from the sale of the marital assets or potential benefits [appellee] may realize if she is successful on her social security disability claim on appeal."
On February 10, 2017, appellant's counsel filed a letter with the court also asking the court for clarification concerning the marital residence and the vehicle in appellee's possession. The letter indicated that appellant wanted: credit for the equity built in the home between the final hearing and sale; appellee to be forced to decide now whether she wanted to keep or sell the vehicle in her possession, and if she kept the car, that appellant receive credit for the car payments that come out of his account toward the alimony granted to appellee; and a time limit be placed on the parties to sell the property on the open market. Appellee's attorney filed another letter on February 17, 2017, seeking a hearing to clarify issues both parties were having understanding the court's ruling.
A decree of divorce from bed and board was filed on March 16, 2017. An amended decree of divorce from bed and board was filed on April 18, 2017. It stated in pertinent part:
4) Upon the sale of either the marital home or the RV, the plaintiff will have the option of retaining the marital car and assuming the debt thereon or, she may elect to sell the car and purchase something else with the proceeds of the sale of the RV or the marital home.
....
6) The defendant shall pay the plaintiff the sum of $1,100.00 dollars monthly for spousal support[.]
7) The defendant shall also continue paying the payment associated with the marital home, the car, the plaintiff's medical and dental insurance, as well as the vehicle insurance, all of which were shown in his affidavit of financial means, which was the basis for the calculation of the spousal support. All ordered payments shall be paid until both the home and the recreational vehicle are sold.
....
14) This court retains jurisdiction over this matter and after a period of five years, either party may return to court for consideration of any intervening factors which may warrant a modification of the defendant's spousal support obligation.
Appellant filed a timely notice of appeal. This appeal followed.
Appellant's first argument is that the trial court's award of permanent alimony *484 was an abuse of discretion. Appeals of domestic-relations proceedings are reviewed de novo.[5] The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal, absent an abuse of discretion.[6] There can be no abuse of discretion, and a circuit court's decision regarding these issues cannot be overturned, unless it can be demonstrated that it exercised its discretion improvidently or thoughtlessly without due consideration.[7]
An award of alimony is not mandatory but rather is discretionary, and the circuit court's decision regarding any such award will not be reversed on appeal absent an abuse of that discretion.[8] This court has recognized that a circuit court is in the best position to view the needs of the parties in connection with an alimony award.[9] The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, in light of the particular facts of each case.[10] The primary factors are the financial need of one spouse and the other spouse's ability to pay, but other factors are the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage.[11] The need for flexibility outweighs the need for relative certainty in assessing alimony.[12] If alimony is awarded at all, it should be an amount that is reasonable under all the circumstances.[13]
Here, we hold that the court's order granting appellee $1,100 a month in what appears to be permanent alimony is unreasonable under the circumstances. There is no doubt that appellee has a need for alimony or that appellant has the ability to pay something to appellee. However, the amount the court ordered appellant to pay appellee is unreasonable given the fact that after his monthly expenses are taken care of, he is left with $1,206.64 from which he has to pay appellee $1,100 in alimony, leaving appellant with only a little over $100 after this payment. Other factors point to a reversal of this award also: (1) the parties lived a rather modest lifestyle in an RV and motorhome; (2) the marital home and RV were ordered to be sold and each party will equally split the proceeds; (3) appellant has a fixed income that is unlikely to change in the future; however, appellee has applied for disability and has appealed that decision so there is a possibility that she will receive disability payments in the future of her own; (4) both parties are going to share equally in the money from the sale of the RV and motorhome; (5) there is evidence that neither party is able to earn any income; (6) the jointly held property is scheduled to be sold and the proceeds divided so no one *485 party will receive a windfall of the money; (7) both parties have bad health and medical needs and appellant is responsible for paying for appellee's medical insurance until the marital property is sold; (8) the parties were only married for six years and this was the third marriage for both of them. Based on this evidence, the court's alimony award was not reasonable and was an abuse of discretion. To the extent that appellant argues that the trial court should have awarded appellee rehabilitative alimony, that issue is not preserved for our review. However, we reverse the court's award of permanent alimony and remand for the court to issue an order consistent with this opinion. In doing so, we are not foreclosing the court from considering whether appellee is entitled to some other form of alimony.
Next, appellant argues that the court's order preventing the parties from moving to modify the alimony for five years is contrary to Arkansas law. Appellee acknowledges that the court erred in this respect but contends that the error was harmless. We disagree that this was harmless error. Court-ordered alimony is always subject to modification.[14] Modification of an alimony award must be based on a significant and material change in the circumstances of the parties, and the burden of showing such a change in circumstances is on the party seeking the modification.[15] Thus, the court abused its discretion in ordering the parties to wait five years before they could seek to modify the alimony award. Accordingly, we reverse.
Finally, appellee argues that the court's refusal to enforce the parties' binding agreement regarding the Mazda car payments and alimony was an abuse of discretion. We agree. Oral stipulations made in open court that are taken down by the reporter and acted upon by the parties and court are valid and binding. Such stipulations are in the nature of a contract.[16] It is not necessary that an agreed statement of facts, admitted by the parties to be true in open court, should be signed by the parties or their attorneys.[17] Contractual stipulations affect the subject matter of the lawsuit. They deal with the rights or property at issue and are styled stipulations only because they occur in connection with the litigation.[18] Here, the parties entered into a contractual stipulation about the disposition of the car in appellee's possession, which affected the marital property at issue. Based on that stipulation, if appellee was awarded alimony, a portion of that alimony was to be used to make the car payment until the car was paid off. There was no agreement that appellant was to pay appellee alimony and pay for the car separately. Therefore, the court abused its discretion by requiring appellant to pay alimony and for the car when that is not what the parties agreed to. Thus, we reverse and remand this issue. However, we note that the agreement only comes into play if, on remand, the court decides that appellee is entitled to some sort of alimony.
Reversed in part; reversed and remanded in part.
Gladwin and Whiteaker, JJ., agree.

Appellee received a cosmetology license in 1983 and kept it current until 2014; she also had an instructor's license which she obtained while in Texas.

Appellant started developing health problems during the first year of his marriage to appellee.

This information came from appellant's affidavit of financial means. At the hearing, he indicated that he had incorrectly calculated his expenses at $18,600 because he included the annual expense of certain things instead of dividing them by twelve. Appellee's affidavit showed that she had a net income of $0, $500 in cash, and monthly expenses of $2,505.

The letter states "appellant's request" but it is apparent that the court was addressing appellee's request.

Wadley v. Wadley , 2012 Ark. App. 208, 395 S.W.3d 411.

Taylor v. Taylor , 369 Ark. 31, 250 S.W.3d 232 (2007).

Smithson v. Smithson , 2014 Ark. App. 340, 436 S.W.3d 491.

Id.

Id.

Id.

Id.

Id.

Id.

Nelson v. Nelson , 2016 Ark. App. 416, 501 S.W.3d 875.

Berry v. Berry , 2017 Ark. App. 145, 515 S.W.3d 164.

Linehan v. Linehan , 8 Ark. App. 177, 649 S.W.2d 837 (1983).

Id.

Id.