Cite as 2024 Ark. App. 166

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-23-31

| | | |
|---|---|---|
| CHARLES TUMEY | | Opinion Delivered March 6, 2024 |
| | APPELLANT | APPEAL FROM THE SHARP COUNTY CIRCUIT COURT [NOS. 68DR-21-39 & 68DR-21-59] |
| V. | | |
| | | HONORABLE ADAM G. WEEKS, JUDGE |
| JILL TUMEY | | |
| | APPELLEE | REVERSED AND REMANDED |

## RITA W. GRUBER, Judge

Charles ("Chris") Tumey brings this one-brief appeal from the Sharp County Circuit Court's May 24, 2022 order awarding appellee Jill Tumey alimony and child support. He raises three points: (1) it was erroneous to award Jill permanent alimony after she disclaimed it; (2) the child-support calculation is flawed and should be reversed; and (3) the retroactive child support should be reversed. In support of his second point, Chris argues that Jill's income was understated because the circuit court did not take into account her Social Security disability (SSD) payments and the entirety of a monthly payment she was awarded as part of the parties' property distribution. Chris also argues in support of his second point that the circuit court should have considered extraordinary medical expenses that Chris was ordered to pay for the children. We reverse and remand.

I. *Factual and Procedural Background*

Chris filed for divorce on February 26, 2021. His complaint set out that the parties were married on October 21, 2010, and two children were born during the marriage: MC1 (female, born 2011) and MC2 (male, born 2014). In his complaint, Chris requested full physical and legal custody of the children, with Jill being awarded supervised or conditional visitation. That same day, Chris filed a verified motion for ex parte emergency custody, supported by his own affidavit as well as the affidavits of two people who worked at his company—TG&H Industrial Energy Services. That motion was granted on March 2, 2021. The circuit court awarded Chris temporary custody of the children and set a hearing for April 19.

On March 22, Jill answered and counterclaimed. Within her counterclaim, she requested primary physical custody of the children subject to Chris's reasonable visitation, child support, and alimony. That same day, she moved to strike the ex parte custody order and for an immediate hearing. On March 23, Chris answered the counterclaim, generally denying its allegations.

On April 14, an "agreed order of protection, consolidation, and for mediation" was entered. The order reflected that this case was being consolidated with another Sharp County case,[1] that the parties had agreed to mediation, and that an attorney ad litem (AAL)

---

[1]Chris had also filed a petition for an order of protection in a separate case on March 19 in which an ex parte order of protection was entered. The substance of that motion, affidavit in support, and order is the same as that filed in this case. The April 14 order of consolidation appears to be in reference to that proceeding.

had been appointed. The court modified the order of protection, lifting it as to the children to facilitate whatever reasonable visitation on which the parties could agree, leaving intact the other provisions regarding Chris.

On May 10, the court entered an order reflecting that Chris had temporary legal and physical custody of the children, pending final adjudication.

On July 21, Jill filed a motion to continue the final hearing set for August 9. She asserted that the continuance was necessary because she had encountered difficulties completing her mental evaluation as well as her own valuation of TG&H due to a lack of funds. She alleged that the lack of funds was caused by TG&H's reporting an incorrect amount of income for her to the IRS—resulting in the termination of her SSD—and Chris's failure to pay her the monthly temporary spousal support upon which they had agreed.

A. November 8, 2021 Hearing

A hearing was held on November 8, 2021. Relevant to the issues on appeal, Chris's attorney informed the court that Jill had supervised visitation until August 2021, when they began unsupervised visitation, with Jill getting the children every Wednesday beginning at school pick up until school drop off on Thursday and every other weekend. Jill's daughter-in-law, Amber Tipton, testified that the children were with Jill for extended periods of time from August to October 2021 due to Chris's traveling out of state for work. Jill withdrew her counterclaim.

A "partial temporary order"—signed November 18, 2021[2]—reflects that the issues of custody, visitation, and support were only partially heard "on this day" and that the final hearing would be held on December 13, 2021. It further specified that Chris would have temporary custody of the children, and the parties by agreement would follow the AAL's recommendation regarding visitation. It ordered Chris to continue paying Jill $1300 a month in temporary alimony.

## B. December 13, 2021 Hearing

Another hearing was held on December 13, 2021. Chris resumed his testimony, going into greater detail regarding his income as well as the various ways in which money flowed through TG&H. Jill testified that her entire income consisted of a monthly SSD payment of $1394, which had stopped when TG&H incorrectly reported that it had paid her $100,00 the previous year. She testified further that she needed continued alimony. Chris's attorney responded that they had already "stipulated that."

Sometime between December 13 and January 31, the parties engaged in mediation but were unable to resolve any issues. The parties were divorced by decree on January 13, 2022. The decree reserved ruling on "[a]ll other issues" until the final hearing on February 24.

## C. February 24, 2022 Hearing

---

[2]This order was not filed until May 16, 2022.

What was to have been the final hearing occurred on February 24, 2022, via Zoom. Because everyone was having technical difficulties, the hearing was continued until April 4. Prior to concluding the hearing, a great deal of discussion was had regarding alimony, including whether it had been properly pled. During the discussion, Chris's counsel argued that Jill's counsel had represented at a prior hearing that she was not pursuing alimony beyond the final hearing because she would be getting money from the business buyout, and her request for it had been withdrawn. The circuit court ultimately stated, "Let's just clean it up, Mr. Graham. If you're going to pursue it, plead it, and let's just clean up the record. And your client, she's gonna do it. Whatever it is."

D.  April 4, 2022 Hearing

A final hearing was held on April 4, 2022. At the outset of the hearing, the court inquired regarding the "need for an amended counterclaim" and if that had occurred. The following colloquy occurred between Chris's counsel, Robin Vail, and Jill's counsel, Luke Graham:

GRAHAM:         Did not, Your Honor. Ms. Tumey's social security has since been—They fixed it. I guess. It was an issue about social security—and her social security had gotten cut off. Now it's back on.

THE COURT:      So the issue is moot?

GRAHAM:         Yes.

THE COURT:  Okay. Everybody's in agreement in regard to that?

VAIL:           Yes, Your Honor.

5

Testimony then began. Jeremy Watson, a certified public accountant as well as a certified valuation analyst, testified that the value of the parties' 50 percent ownership interest in TG&H was $300,000 as of October 31, 2021. He also explained the method by which he arrived at that conclusion. His report was introduced into evidence.

Brad Hopkins, the CFO of TG&H, testified regarding TG&H's assets, debts, operating expenses, liabilities, and clientele. He further testified that TG&H did not have the funds to write Jill a check for $150,000.

Chris also testified that TG&H could not write a check for $150,000. He further testified that while he understands Jill is entitled to one-half of their share of TG&H, he would like Jill's portion offset by its debts and that a fair and equitable settlement would be $1000 a month over sixty to sixty-five months, for a total of $60,000 to $65,000. Regarding the children, he testified that, at a minimum, he had sole custody of them from February to August 2021.

Jill testified that she receives $1500 a month in SSD. She explained that she is unable to work full time due to physical and mental-health issues, and she cannot make more than $1200 a month and keep her SSD. Regarding her marital interest in TG&H, she testified that she does not want to be paid in monthly installments only but would like at least a partial lump sum followed by more than $1000 a month. She also testified that most of the debt is Chris's; she cannot pay it; and she would like the court to distribute the debt unequally with Chris being responsible for the debt.

The parties made closing arguments. Chris requested that $290 a week in income be imputed to Jill because she testified that is what she could earn and keep her SSD. He further argued she should receive somewhere around $60,000 for her share of TG&H. Jill argued that she would like child support to be retroactive to July 2021, which is when the parties began joint custody. She argued that she should receive somewhere around $310,000 for her share of TG&H. Chris responded that retroactive child support had not been pled, and Jill's not receiving child support was one of the factors considered in reaching their prior agreement for rehabilitative alimony. She responded that they agreed to rehabilitative alimony until the buyout was paid, which had nothing to do with child support, which is always an issue.

On April 8, 2022, the court issued a letter to the parties setting out its rulings. Regarding all financially related decisions, the court considered Jill's financial need, Chris's ability to pay, the lifestyle afforded them by Chris's income during the marriage, the length of the parties' marriage, the parties' ages, the amount of child support that will be paid to Jill, the child-support arrearage, and the TG&H distribution. The court also considered the way the parties conducted their financial business, finding that Chris had earned a significant income during the marriage, which the parties appeared to have spent, causing there to be no savings or assets available to distribute in lump sum to Jill.

The court awarded joint physical custody with Chris having "final say in any disagreements that may arise." The court ordered that the children continue with counseling. The court imputed a weekly income of $290 to Jill, determined that Chris's annual income

was $317,413, and directed that the parties' counsel determine the child-support obligation with those incomes, using the current Administrative Order No. 10 formula. The court also ordered that child support be retroactive to July 1, 2021, with the arrearage being paid as a lump sum to Jill within three months of entry of the "final decree."

Regarding TG&H, the court credited Watson's testimony and found that the value of the parties' 50 percent TG&H interest was $300,000. The court then ordered Chris to pay Jill $1500 a month for one hundred months—$150,000—as payment for her marital portion of TG&H. The court also ordered Chris to pay Jill alimony in the amount of $1000 a month from and after the last TG&H payment.[3]

The court ordered that Chris would take all the marital debt due to Jill's inability to earn, given the evidence put on—largely by Chris—of her long history of mental and physical health issues. The parties were directed to divide their personal property prior to entry of the final decree, with anything they were unable to agree on to be sold at auction. The marital home and acreage were ordered sold, with the proceeds being split evenly. Jill's attorney was directed to draft the order.

On May 16, Chris's attorney sent the court a letter and proposed precedent with blanks for child support. The letter stated that Chris was objecting to Jill's child-support calculations because she did not include the following in her calculations: (1) the $375 a month Chris paid for the children's counseling, (2) the $1500 a month Jill would be

_____

[3]There was no termination provision regarding the alimony.

receiving as part of their property distribution, and (3) her monthly $1500 SSD. Chris believed that the correct amount of child support should be $1563. Chris asked that the court reconsider the retroactive application of the child support.

On May 20, 2022, the court issued a letter ruling reflecting that the court, having considered the equities, would include half of the TG&H property distribution as part of Jill's income for child-support purposes. The court explained that it had also considered that it was unable to award a lump sum to Jill for her equitable portion of TG&H; the property award was available to her to spend as income; and the award was not child support and thus did not carry the same enforcement tools.

On May 24, 2022, the "order after final hearing" was filed, setting out the court's rulings contained in the April 8, 2022 letter, as modified by the May 20, 2022 letter. The circuit court awarded Jill $1712 a month in child support as well as a child-support arrearage of $18,832. The court ordered that the arrearage be paid within three months of entry of the final order.

On June 7, Chris moved for reconsideration, arguing, in part, that the circuit court had incorrectly calculated his child-support obligation; the court should not have ordered alimony; and the court should not have ordered retroactive child support. Jill moved to strike Chris's motion for reconsideration as untimely that same day, arguing that it was not filed with the requisite ten days.[4]

---

[4]It was timely. *See* Ark. R. Civ. P. 6(a).

9

Chris filed his notice of appeal on June 23, 2022. On July 11, Chris filed an amended notice of appeal, specifying that he was appealing the May 24, 2022 order and the July 7, 2022 deemed denial of his motion for reconsideration.

## II. *Discussion*

Arkansas Code Annotated section 9-12-312(a)(1) (Repl. 2020) requires that "when a decree is entered, the court shall make an order concerning the care of the children, if there are any, and an order concerning alimony, if applicable, as are reasonable from the circumstances of the parties and the nature of the case."

## A. Alimony

Chris first contends that the circuit court erred in awarding Jill permanent alimony after she disclaimed it. A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Chekuri v. Nekkalapudi*, 2020 Ark. 74, at 18, 593 S.W.3d 467, 477. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Carr v. Carr*, 2019 Ark. App. 513, at 6–7, 588 S.W.3d 821, 826.

Jill requested temporary alimony in her March 22, 2021 answer and counterclaim. However, her counterclaim was withdrawn on the record at the November 8, 2021 hearing. At some point, the parties agreed that Chris would pay Jill $1300 a month in alimony, with the understanding that it was temporary and would cease upon the business buyout. Jill never requested permanent alimony.

Alimony was discussed at the December 13, 2021 hearing:

10

GRAHAM:          —we're just requesting until she gets her buyout from business. Temporary alimony from now until she gets the buyout from the business.

THE COURT:       So you think that the buyout from the business is restorative enough that she—that temporary alimony is all that is necessary?

GRAHAM:          Yes.

THE COURT:  Is she currently getting any alimony?

GRAHAM:          Thirteen hundred a month.

. . . .

THE COURT:       I just found the typical considerations, ability to pay and need, and I mean until somebody shows me otherwise that I specifically have to make some sort of special finding in regard to child support I'm not going to because it's pretty clear that over and over again the Court has ruled that there is a series of factors and those are the ones I'm going to use, period.

GRAHAM:          She either needs it or she doesn't. He can either pay it or he can't.

AAL:             Right.

GRAHAM:          Well, there's the need side too.

. . . .

VAIL:            And then after that, I just say that we continue on with the custody presentation because, I mean, we'll stipulate that alimony, rehabilitative alimony, needs to continue until you've got other evidence. We don't—that namely being the company buyout.

THE COURT:       I don't think I can make a final determination regarding child support, I'm sorry, alimony today without information either. Mr. Graham, do you have any argument otherwise?

11

GRAHAM:               And what we're—all we're arg—all we're seeking, Your Honor, is rehabilitative alimony until that happens and she gets the buyout from the company.

VAIL:                 And we've agreed to it also.

GRAHAM:               We're only requesting it on a temporary basis anyway. So.

THE COURT:            Do you disputing [sic] that amount currently being paid is not appropriate—

GRAHAM:               No.

THE COURT:  —until then?

GRAHAM:               No.

THE COURT:            So can we stipulate that alimony is appropriate and—temporary alimony is appropriate. That the amount that is currently being paid is appropriate and that it shall be paid until the buyout of the company is made?

GRAHAM:               I believe so, Your Honor. I think that's fine.

VAIL:                 Thank you, Judge.

The alimony issue was argued once more at the February 24, 2022 hearing. The takeaway at the conclusion of that hearing was that Jill would replead it. However, at the next and final hearing on April 4, Jill's counsel made clear that he had not repleaded it, because the issue with her SSD had been resolved, and her benefits had resumed. Jill's counsel affirmed that the issue was "moot."

As Chris recognizes in his brief, the cases he relied upon—*Carty v. Carty*, 222 Ark. 183, 258 S.W.2d 43 (1953); *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000); and

*Robertson v. Robertson*, CA 96-935 (Ark. App. April 30, 1997)[5]—do not squarely address the issue. In those cases, to the extent alimony was at issue, the analysis revolved around whether alimony was properly requested before it was awarded. The issue here is whether the circuit court abused its discretion when the party who was awarded permanent alimony did not ask for it, and there was an agreement in place between the parties that any alimony would be temporary.

*Williams v. Williams*, 2018 Ark. App. 79, 541 S.W.3d 477, and *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007), are instructive. In *Williams*, the parties stipulated to the disposition of a car in appellee's possession, which affected the marital property at issue. 2018 Ark. App. 79, at 15, 541 S.W.3d at 485. On the basis of that stipulation, if appellee was awarded alimony, a portion of that alimony was to be used to make the car payment until the car was paid off. *Id.* However, the circuit court required appellant to pay alimony *and* pay for the car. *Id.* On appeal, appellant argued that the circuit court's refusal to enforce the parties' agreement regarding the car payments and alimony was an abuse of discretion. *Id.* Our court agreed, reversing the circuit court and holding that requiring the parties to do something other than that to which they had agreed constituted an abuse of discretion. *Id.* In doing so, we noted that oral stipulations made in open court that are taken down by the reporter and acted on by the parties and court are valid and binding, and such stipulations are in the nature of a contract. *Id.* We further noted that it was not necessary that an agreed

---

[5]Chris recognizes that the case was not designated for publication and thus has no precedential value.

statement of facts, admitted by the parties to be true in open court, should be signed by the parties or their attorneys. *Id.*

In *Artman*, the issue was whether the parties' agreement regarding the duration of the alimony payment (ten years) was superseded by the plain language of the statute that provides for the cessation of alimony upon the remarriage of the recipient. 370 Ark. 131, 136, 257 S.W.3d at 868. There, our supreme court explained that the parties can enter into an agreement setting the terms of an alimony obligation such that it may continue beyond the alimony recipient's remarriage. *Id.* The court concluded that it was undisputed that the agreement between the parties was unambiguous and that it required one party to pay the other alimony for a period of ten years—it was an "agreement otherwise" as contemplated by Arkansas Code Annotated section 9-12-312(a)(1). *Id.* The court held that the statutory automatic-termination provision regarding remarriage was thus not applicable and affirmed the trial court's decision refusing to terminate the alimony obligation. *Id.* While there was a written agreement in *Artman*—as opposed to here, where there was none—it can be extrapolated that parties to a divorce may contract both *in and out* of something to which the party may otherwise by entitled, and it is not an abuse of discretion for a circuit court to enforce such an agreement.

The only request for alimony contained within a pleading was in Jill's counterclaim, which she withdrew at the November 8, 2021 hearing and chose not to replead. Jill stipulated at the April 4, 2022 hearing that the issue of alimony was "moot." Most importantly, the parties had an agreement that any alimony would be temporary. We have no opinion on the

14

validity of the award of permanent alimony had none of those things occurred. However, under the present circumstances, we believe the circuit court abused its discretion in awarding Jill permanent alimony. Accordingly, we reverse.

## B. Child Support

Jill was awarded $1712 a month in child support. Chris contends that that amount is erroneous because the circuit court's calculations were flawed. In support of this point, Chris makes three separate arguments: (1) Jill's income was understated because her SSD was excluded from the court's calculations; (2) the circuit court, in calculating Jill's income, erred by not including the entirety of the monthly award Jill was to receive as her marital share of TG&H; and (3) the court failed to consider the extraordinary medical expenses paid by Chris—specifically the children's counseling.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Cathey v. Altazan*, 2023 Ark. App. 314, at 5, 669 S.W.3d 614, 617. However, a circuit court's conclusions of law are given no deference on appeal. *Id.* at 6, 669 S.W.3d at 618. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.*, 669 S.W.3d at 617–18. In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and the court's findings will not be reversed absent an abuse of discretion. *Id.* at 6, 669 S.W.3d at 618. An abuse of discretion generally occurs when the circuit court's discretion is applied thoughtlessly, without due

consideration, or improvidently. *Grynwald v. Grynwald*, 2022 Ark. App. 310, 651 S.W.3d 177.

Supreme Court Administrative Order No. 10 (Admin. Order 10) mandates that circuit courts use the "Income Shares Model" adopted by the Arkansas Supreme Court in *In re Implementation of Revised Administrative Order No. 10*, 2020 Ark. 131 (per curiam), which became effective on June 30, 2020. This model considers the incomes of both parties instead of basing child support solely on the payor's income. Under the revised "Family Support Chart," each parent's share is that parent's prorated share of the two parents' combined gross income, subject to certain deviations or adjustments.

"'Income' means the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed as allowed under Section III.7." *Id.* at 5. "'Income' is intentionally broad and designed to encompass the widest range of sources consistent with the State's policy to interpret 'income' broadly for the benefit of the child." *Id.* (quoting *Evans v. Tillery*, 361 Ark. 63, 70, 204 S.W.3d 547, 552 (2005). Gross income includes, but is not limited to, wages; earnings generated from a business, partnership, contract, self-employment, or other similar arrangement; SSD payments; or any money or income due or owed by another individual, source of income, government, or other legal entity. *Id.*

The court determined that Jill had a total gross monthly income of $2006.86 for purposes of child support. In arriving at that amount, the court imputed $290 a week gross income to her, in light of her testimony that this is the amount she can earn and still retain

her SSD. That amount, multiplied by 4.334 equals $1256.86. The court then added 50 percent of Jill's monthly TG&H property distribution award ($1500 divided by 2 equals $750; $1256.86 plus $750 equals $2006.86). The court did not consider Jill's SSD in calculating her income. The court arrived at a total monthly income for Chris of $26,451.08, which was representative of the salary and benefits he receives as an employee of TG&H. The court considered neither the money expended by Chris on the court-mandated counseling for the children nor any portion of the value of Chris's share of the TG&H property distribution.

### 1. *SSD payments*

Chris argues that the circuit court should have included Jill's SSD in calculating her monthly income. Jill's monthly SSD is $1500. Administrative Order 10 and our caselaw make clear that SSD benefits (but not SSI) are considered income for purposes of determining child support. We hold that the circuit court erred in failing to include that amount in its calculations. *See Vice v. Vice*, 2016 Ark. App. 504, 505 S.W.3d 719 (setting out that in *Szabo v. Womack*, 2011 Ark. App. 664, *abrogated on other grounds by Szabo v. Womack*, 2013 Ark. App. 198, we held that a noncustodial parent was entitled to a credit against his child-support obligation for the SSD benefits his dependent minor received *after* we held that these benefits were considered income to the noncustodial parent); *see also Ark. Office of Child Support Enf't v. Hearst*, 2009 Ark. 599, at 9–10, 357 S.W.3d 450, 455–56 (holding that SSD benefits paid to dependent children of a noncustodial parent based on the noncustodial

parent's disability are considered income to that parent for the purpose of calculating child support).

## 2. *TG&H payments*

Chris argues that the monthly award to Jill for her marital share of TG&H is a "periodic form of payment due to [her], regardless of the source" as included in the definition of "income" in Arkansas Code Annotated section 9-14-201(4)(A). As such, the circuit court should have considered the entirety of the payment as Jill's "income" for child-support purposes.

No question has been raised that the parties' 50 percent share of TG&H was marital property. The circuit court found that the parties' share of TG&H was valued at $300,000. Chris was to be awarded the parties' 50 percent share of TG&H. The testimony presented to the circuit court was that there were insufficient funds to award Jill the value of her half of the 50 percent share of TG&H in one lump sum. Thus, the circuit court ordered that her share of the marital property be awarded in monthly installments—$1500 a month for one hundred months.

While income is broadly defined, we are aware of no instance in which the value of a marital asset awarded to a party as part of the parties' property distribution was then utilized in determining the party's income for purposes of calculating child support, nor has Chris cited any precedent for doing so. Accordingly, we hold that the circuit court erred in utilizing half of the monthly property-distribution award to Jill in calculating her income for child-support purposes.

### 3. *Extraordinary medical expenses*

Chris expends approximately $375 a month on counseling for the children—counseling that was court ordered to be continued. This meets the definition of extraordinary medical expenses found in Administrative Order 10, and we hold that he should have been given the benefit of such by the circuit court when it made its child-support calculations.

In summary, the circuit court erred in failing to consider Jill's SSD and in utilizing half of her property-settlement award for purposes of calculating her income. The circuit court also erred in failing to consider Chris's monthly counseling payments. Accordingly, we reverse the child-support determination and remand for the circuit court to recalculate each parties' respective income in light of the holdings in this opinion. The circuit court shall then determine the proper child-support obligation pursuant to the dictates of Administrative Order 10.

### C. Retroactive Child Support

The circuit court ordered that Chris pay Jill eleven months' retroactive child support, a total of $18,832.00, to be paid in a lump sum within ninety days of the entry of the order. Chris contends that the circuit court erred when it ordered that the child support be retroactive to July 1, 2021, because Chris was the custodial parent until the May 24, 2022 order was entered. Relying on Arkansas Code Annotated section 9-14-218(a)(1)(A) (Repl. 2020), he argues that the custodial parent is not required to make child-support payments to the noncustodial parent. The record reflects that from the time the March 2, 2021 ex-parte

order was entered granting Chris temporary custody, all subsequent orders continued temporary custody with Chris. This was so until the final order was entered on May 24, 2022, awarding the parties joint custody.

Thus, during the pendency of the divorce, Chris was the sole custodial parent, and the circuit court erred in ordering that the child support be retroactive. Accordingly, we reverse the award of retroactive child support.

Reversed and remanded for the circuit court to take such action as necessary consistent with this opinion.

Reversed and remanded.

GLADWIN and BARRETT, JJ., agree.

*Law Offices of Miller Vail, P.A.*, by: *Robin M. Vail*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

One brief only.